**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **PEDRO MONGE-MARIN** | CIVIL NO. 16-2361 |
| PLAINTIFF | |
| VS. | |
| **WEST MARINE PRODUCTS, INC.;** **WEST MARINE PUERTO RICO, INC.;** **INSURANCE COMPANY XYZ;** **COMPANY ABC;** **JOHN & JANE DOE.** | DISCRIMINATION BASED ON AGE, WRONGFUL TERMINATION (SEVERANCE PAY), AND TORT DAMAGES TRIAL BY JURY DEMANDED |
| DEFENDANTS | |

**COMPLAINT**

**TO THE HONORABLE COURT:**

**COMES NOW, Pedro Monge-Marin** (hereinafter referred as "Plaintiff")**,** through the undersigned attorneys and very respectfully states, alleges and prays as follows:

**PRELIMINARY STATEMENT**

1.     The Plaintiff, who is 59 years old, worked for West Marine Products, Inc. and West Marine Puerto Rico, Inc. (hereinafter jointly referred to as "Defendants" and/or "West Marine") since approximately March 23rd, 2000, until his discriminatory termination on September 3rd, 2015. At all times during the Plaintiff's term as Store Manager at the Defendants' Fajardo Store, the Plaintiff always worked for the benefit of the Defendants, creating a friendly environment for its employees and encouraging relations with customers. The Defendants however discriminatorily terminated the Plaintiff based on false pretextual grounds, falsely alleging that the Plaintiff violated company policies with regards to battery core disposals and a store BBQ Grill. In reality, the company policy with

regards to the battery core disposal is not clear and did not apply in Puerto Rico; and the allegations with regards to the use of the BBQ Grill were completely false. In addition, the Plaintiff followed the same protocol actions that another younger store manager at the Defendants' San Juan Store had implemented before the Plaintiff. Discriminatorily, the Defendants did not reprimand nor did they terminate the younger store manager for the same alleged conduct, but instead reprimanded and terminated the Plaintiff.

2.      Such actions constitute a disparate treatment by the Defendants, based on age discrimination.

3.      Plaintiff files this civil action against the Defendants based on the following: discrimination based on Age pursuant to the Age Discrimination in Employment Act, 29 USC sec. 621 *et seq*., Puerto Rico's Law No. 100 of June 30, 1959, 29 LPRA sec. 146 *et seq*.; and Section 1 of Article II of the Constitution of the Commonwealth of Puerto Rico; Wrongful Termination (Unjust Dismissal) pursuant to Puerto Rico's Law No. 80 of May 30, 1976, 29 LPRA sec. 185a *et seq*.; and Tort Damages pursuant to Articles 1802 and 1803 of Puerto Rico's Civil Code, 31 LPRA secs. 5141, 5142.

4.      Plaintiff seeks compensatory, punitive, double and liquidated damages, severance pay, back pay, front pay, and equitable and injunctive relief for Defendants' unlawful and discriminatory employment termination of the Plaintiff on the basis of his age. In addition, Plaintiff seeks other specific remedies that restore him to the position that he would have held in the absence of discrimination.

**JURISDICTION AND VENUE**

5.      The United States District Court for the District of Puerto Rico has jurisdiction over this action under 28 U.S.C. sec. 1331 since the matter of this civil action

arises under the Constitution, laws, or treaties of the United States. Specifically, Plaintiff files this action pursuant to the Age Discrimination in Employment Act (hereinafter referred as "ADEA").

6.      Plaintiff further invokes pendent or supplemental jurisdiction of this Court under 28 USC sec. 1367 to hear Puerto Rico constitutional and law claims arising from the same nucleus of operative facts. Specifically, Plaintiff files this action pursuant to Section 1 of Article II of the Constitution of the Commonwealth of Puerto Rico, P.R. Law 100 of June, 30, 1959, 29 LPRA sec. 146 et seq.; P.R. Law 80 of May 30, 1976, 29 LPRA sec. 185 *et seq*, and Tort Damages pursuant to Articles 1802 and 1803 of Puerto Rico's Civil Code, 31 LPRA secs. 5141, 5142.

7.      Pursuant to 28 U.S.C. sec. 1391 (a), venue is proper in the District of Puerto Rico because the events that justify the causes of action occurred in this district and the defendant resides within this judicial district.

8.      Before filing this instant case, Plaintiff filed timely charges of discrimination on the basis of age before the state Equal Employment Opportunity Commission (hereinafter referred to as "EEOC") within one hundred and eighty (180) days and/or three hundred (300) days after the adverse employment action. Notice of Right to Sue from the EEOC was received by the Plaintiff. Plaintiff thus filed this timely Complaint within ninety (90) days of receipt of the EEOC's Notification of Right to Sue.

9.      Plaintiff demands that all causes of action be tried before a jury.

**PARTIES**

10.     Plaintiff, Pedro Monge-Marin, is of legal age, single, domiciled and resident of Fajardo, Puerto Rico. Plaintiff is over forty (40) years of age. At the time of Plaintiff's

termination of his employment with Defendants, he was 58 years of age. Plaintiff's physical and postal address is Barrio Jerusalen, Calle 3, Num. F2, Fajardo, PR 00738.

11.     Defendants West Marine Products, Inc. and West Marine Puerto Rico, Inc. (hereinafter jointly referred to as "Defendants" and/or "West Marine") are for profit business entities dedicated as a supply retailer for boating, sailing and fishing products. The Defendants employs more than 20 employees. The Defendants constitute an integrated enterprise and are therefore to be considered as a single employer because of the degree of interrelationship, common ownership and control, common management, and the degree of centralization of labor relations and personnel functions at the West Marine's place of business in the Commonwealth of Puerto Rico. The Defendants have the same business address, located in 500 Westridge Drive, Watsonville, CA 95076. The Defendants currently have two store locations in Puerto Rico, one in San Juan and another in Fajardo. The Fajardo store in Puerto Rico is located at Eastern Shopping Plaza, 4186 Carr. Estatal, Fajardo, PR 00738.

12.     Co-Defendant, Insurance Company XYZ (hereinafter referred to as "Insurance Company XYZ"), held an insurance policy in favor of the Defendants. At the time of the discriminatory incidents described herein, Insurance Company XYZ held an insurance policy in favor of the Defendants, specifically to cover said discriminatory claims. Their Current address is unknown. Plaintiff reserves the right to amend the Complaint once more information is discovered.

13.     Co-Defendant, Company ABC (hereinafter referred to as "Company ABC"), is another business company, which is the parent company or an affiliated company of the Defendants, that directed and had knowledge of Defendants' discriminatory acts of which

Plaintiff is complaining. Their Current address is unknown. Plaintiff reserves the right to amend the Complaint once more information is discovered.

14.     Co-Defendant, John & Jane Doe (hereinafter referred to as "Doe"), is another agent, supervisor, official or director who is affiliated with the Defendants, who directed and had knowledge of Defendants' discriminatory acts of which Plaintiff is complaining. Their Current address is unknown. Plaintiff reserves the right to amend the Complaint once more information is discovered.

## THE FACTS

15.     On March 23rd, 2000, the Plaintiff started working for West Marine as Assistant Manager I at the Fajardo store in Puerto Rico, located at Eastern Shopping Plaza, 4186 Carr. Estatal, Fajardo, PR 00738.

16.     At approximately 2002, the Plaintiff was promoted to Store Manager at the Fajardo store in Puerto Rico.

17.     The Plaintiff occupied this position for approximately thirteen (13) years until his unlawful employment termination on September 3rd, 2015.

18.     The Plaintiff's general duty as a Store Manager was to achieve the sales goal of the business unit through planning, coordinating and managing all operations of the store. These operations include: ensuring an excellent sales and customer service experience with customers, meeting and exceeding the store's annual sales goal, accountability for the Profit and Loss statement, inventory shrinkage, coaching Associate and high quality of work life results.

19.     The Plaintiff also supervised and reviewed the work of subordinate Associates.

20.     The Plaintiff reported to the District Manager, who in his case was Edgardo Conde (hereinafter referred as "Mr. Conde"). Mr. Conde was located at the Miami District office in Florida.

21.     Since the beginning of the Plaintiff's employment, the West Marine stores in Puerto Rico had a distinct situation regarding the used and old battery cores of boats.

22.     Specifically, the batteries that the West Marine stores in Puerto Rico sold originated from the West Marine Warehouse located in 860 Marine Dr., Rock Hill, SC 29730.

23.     The Puerto Rico stores were distinguishable from the stateside stores because there were no local battery vendors in Puerto Rico. In the stateside stores, the battery vendors had a program in which they coordinated the disposal of the used and old battery cores. Specifically, West Marine had established procedures that all returned and damaged batteries must be picked up by a battery vendor. However, in Puerto Rico, this process was non-existent because there were no local battery vendors.

24.     After the Plaintiff's appointment as Store Manager of the West Marine Fajardo store, the Plaintiff found himself at a loss on how to dispose the old and used battery cores. The Plaintiff communicated with Mr. Conde his concern about the battery core disposal. Mr. Conde replied to the Plaintiff's communication by explaining that he would discuss this particular situation of the Puerto Rico stores with the Upper Management of West Marine.

25.     In addition to Mr. Conde, the Plaintiff had also discussed the battery core problem with the San Juan Store Manager, Mr. Eugenio Rafael Rodríguez (hereinafter referred as "Mr. Rodriguez"), who explained to the Plaintiff that because no battery vendors

existed to pick up the old and used battery cores, Mr. Rodriguez would send the battery cores to his nearest recycling center.

26.     Mr. Rodriguez occupies the same Store Manager position as the Plaintiff, but is substantially younger of age.

27.     Furthermore, Mr. Rodríguez told the Plaintiff that he also spoke with Upper Management of West Marine, particularly with Mr. Rich Meldrum (hereinafter referred as Mr. Meldrum") about the battery core situation, and Upper Management never addressed his concern.

28.     After the Plaintiff communicated his concerns to Mr. Conde, Upper Management never got in contact with the Plaintiff to address the battery disposal issue.

29.     Sometime later, Mr. Conde arrived at the Fajardo store in order to conduct one of his various store audits after the Plaintiff had submitted to Mr. Conde his battery disposal concern. During said store audit, Mr. Conde asked the Plaintiff whether Upper Management had communicated with him regarding the battery disposal. The Plaintiff replied to Mr. Conde that he did not receive any communication whatsoever regarding the battery disposal. Mr. Conde then told the Plaintiff that he should continue disposing of the battery cores similarly to the recycling process undertaken by the San Juan store. After hearing Mr. Conde's authorization to dispose of said battery cores at the recycling center, the Plaintiff continued delivering the battery cores to the nearest recycling center. Similarly to the San Juan store, all proceeds that were acquired after delivering the battery cores at the recycling center were to be used for store purposes and store activities for employees.

30.     At approximately mid-March of 2014, the West Marine Fajardo store celebrated an inauguration of the new and improved store facility. West Marine was going to celebrate the inauguration on March 21st to the 23rd.

31.     Before these dates, West Marine was preparing for the celebration. The Store Development Department of West Marine held various telephone conferences with the managers of the Fajardo store, which included the Plaintiff and Estella Mentonis, Assistant Manager I (hereinafter referred as "Mrs. Mentonis").

32.     The Store Development staff gave the Plaintiff and Mrs. Mentonis many instructions concerning the inauguration of the grand opening of the new store. One of the instructions was to "write off" a BBQ grill from the store inventory and use it for the celebration.

33.     After hearing said instructions from the Store Development personnel, Mrs. Mentonis and the Plaintiff proceeded to request Magline Concepción (hereinafter referred as "Mrs. Concepción"), Inventory Manager of the Fajardo store, to "write off" a BBQ grill from the inventory. The BBQ grill that was "written off" inventory was a Monterrey infrared gas grill. Said grill was utilized from March 21st to the 23rd of 2014. In addition to that BBQ grill, there was another gas grill at that time that was supposed to be "destroyed in field". However, the Plaintiff repaired that gas grill in order to be able to celebrate the inauguration of the new store with not one, but two gas grills.

34.     After the end of the inauguration, the BBQ grill that was "written off" inventory was kept on the store location to be used for the benefit of the store, specifically for store activities for employees.

35.     The second BBQ grill that was supposed to have been "destroyed in field" was instead placed at the back room of the store where it remained just in case parts were needed for the "written off" BBQ grill.

36.     Throughout the year, the Plaintiff took the decision to utilize the "written off" BBQ grill for the benefit of West Marine, by using it for store activities in order to improve employee-manager relations and mood.

37.     This BBQ lasted approximately one year until an accident occurred approximately on March and/or April of 2015, where the BBQ suffered damages.

38.     As Store Manager, the Plaintiff took it upon himself to repair the BBQ free of cost with his own labor for the benefit of West Marine.

39.     In order to repair the BBQ grill, the Plaintiff used the parts of the abandoned BBQ grill that was located at the back room of the West Marine Fajardo store. The Plaintiff was trying to fix the BBQ grill during non-working hours and during his sabbatical leave.

40.     At no time did the Plaintiff ever use this BBQ grill for his own personal benefit, but instead, he always sought a healthy environment for the West Marine employees by using the BBQ grill for store activities for the employees.

41.     On August 26th, 2015, the Region Manager, Mr. Eric Rimblas (hereinafter referred as "Mr. Rimblas"), and the Asset Protection Manager, Mr. Rich Meldrum (hereinafter referred as "Mr. Meldrum"), conducted a surprise visit at the Fajardo store.

42.     They initially approached the Plaintiff to ask about the different protocols that the store followed with regards to the donations that the Fajardo store took upon itself when participating in different fishing tournaments. Specifically, they asked what procedures did the store do when "writing off" products that would eventually be donated.

43.     The Plaintiff explained to them about all the store protocols and procedures taken by the Store Managers and the Inventory Manager. After the Plaintiff's explanation, Mr. Meldrum asked the Plaintiff what BBQ grills were being used for the store. The Plaintiff explained to Mr. Meldrum that the store is currently using the BBQ gas grill that was "written off" inventory on March of 2014.

44.     After the Plaintiff explained to Mr. Meldrum about the BBQ grill, Mr. Meldrum asked whether the Plaintiff had a problem with any employee at the Fajardo store.

45.     Surprised by this question, the Plaintiff proceeded to tell them that, of all thirteen employees at the Fajardo store, three of them had always had some type of issue with the Plaintiff. After this answer, Mr. Meldrum told the Plaintiff that Mrs. Mentonis had apparently submitted a complaint against the Plaintiff.

46.     The Plaintiff was never given any written complaint, but Mr. Rimblas and Mr. Meldrum verbally informed the Plaintiff that Mrs. Mentonis was complaining about the fact that the Plaintiff took the BBQ to his home in order to repair it during non-work hours.

47.     The Plaintiff explained to both Mr. Rimblas and Mr. Meldrum that he was repairing the BBQ for the benefit of the West Marine store to improve employee relations.

48.     During the course of the conversation, the Plaintiff, Mr. Rimblas and Mr. Meldrum spoke of products and/or inventory that were supposed to be disposed and/or "destroyed in field". As a natural consequence of the conversation, the Plaintiff explained of all the different disposal procedures that existed in the Fajardo store, which included the battery disposal procedure that was established because of the lack of local battery vendors in Puerto Rico.

49.     The Plaintiff explained to Mr. Rimblas and Mr. Meldrum that this battery disposal procedure was copied from the San Juan store, which was overseen by Mr. Rodríguez, the same Mr. Rodríguez that had asked Mr. Meldrum on January, 2015, about the Puerto Rico situation regarding the battery disposal. This conversation with Mr. Meldrum and Mr. Rimblas lasted approximately one hour.

50.     At the end of the conversation, Mr. Rimblas informed the Plaintiff that they were going to discuss the situation with the Human Resources Department and notify the Plaintiff of the next step.

51.     The Plaintiff was surprised with this comment regarding Human Resources, because at no point during this August 26th, 2015 visit, did either Mr. Rimblas or Mr. Meldrum inform the Plaintiff that they were investigating in order to reprimand or terminate the Plaintiff. The Plaintiff understood that they were randomly visiting the Fajardo Store for a random surprise audit.

52.     On September 3rd, 2015, Mr. Rimblas and Mr. Conde made another unannounced visit at the Fajardo store.

53.     The Plaintiff was randomly given a document titled "Corrective Action". Said document stated that the reason behind this corrective action was that the Plaintiff broke company rules. Additionally, it stated that the Plaintiff had no previous warnings.

54.     However, West Marine explained that during a recent investigation, they found that the Plaintiff allegedly misappropriated West Marine property and funds for his own personal use. It stated that both violations were not permitted and merited an immediate dismissal.

55.     The Plaintiff was shocked after receiving this document because, after working for more than 15 years for the benefit of West Marine and having a near perfect employment record, the Plaintiff was being fired based on erroneous findings.

56.     The Plaintiff truly believed, as well as his store employees, that both of these actions concerning the BBQ grill and the battery cores were completely for the benefit of the West Marine store and not for his own personal use.

57.     The Plaintiff asked Mr. Conde why they were firing him, because the Plaintiff felt that there was no just cause and it was completely wrong. Mr. Conde informed the Plaintiff that he did not take the decision to fire the Plaintiff and that he had no idea why the Plaintiff was being fired to begin with.

58.     In turn, Mr. Rimblas also said he had nothing to do with the decision, that he also felt that it was unjust, and that the Plaintiff should take remedial action. Mr. Rimblas accompanied the Plaintiff while he picked up all his personal belongings. After picking up his belongings, the Plaintiff gave his store key to Mr. Rimblas.

59.     West Marine has taken discriminatory actions against the Plaintiff. Even though the Plaintiff explained the situation to Mr. Meldrum, which is the same situation that the San Juan Store Manager also had, the Plaintiff was discriminately fired from his job without any just reason.

60.     There is no just cause for Mr. Meldrum to take said discriminatory actions against the Plaintiff and not against Mr. Rodríguez.

61.     Over the course of Plaintiff's fifteen (15) years of employment, the Plaintiff was only reprimanded once during his early years as a Store Manager. Besides that reprimand, the Plaintiff has had a perfect employee record.

62.     The Plaintiff was never suspended from his employment.

63.     Plaintiff always fulfilled and excelled at his duties, and such was reflected in all of Plaintiff's sales, work performance and evaluations.

64.     After the Plaintiff's illegal termination, the Defendants did not take any corrective action against Mr. Rodriguez, who was the younger Store Manager who had incurred in the same type of actions as the Plaintiff.

65.     After the Plaintiff's illegal termination, the Defendants hired a younger person to replace the Plaintiff in the Store Manager position.

66.     After the Plaintiff's illegal termination, Plaintiff filed a claim for unemployment benefits before the Puerto Rico Department of Labor Agency.

67.     In addition, Plaintiff filed his charge of discrimination based on Age.

68.     During the unemployment benefits administrative hearing, the Arbitrator adjudicated and approved the Plaintiff's Claim, determining that the Plaintiff was a beneficiary of unemployment benefits because his termination was wrongful.

69.     Mr. Meldrum is an agent who is duly authorized by the Defendants, who committed a discriminatory act in the course and scope of his agency relationship, thus imposing liability to the Defendants.

70.     The Defendants had knowledge of Mr. Meldrum's arbitrary and discriminatory actions. The Defendants did not take any proper action to rectify and/or avoid the discriminatory actions incurred by Mr. Meldrum. The Defendants allowed Mr. Meldrum to discriminate against the Plaintiff by terminating the Plaintiff based on false pretextual grounds, when the same discipline was not applied to the younger Store Manager, Mr. Rodriguez, thus discriminating against the Plaintiff because of his age.

71.     Company ABC was the parent company or an affiliated company of CDM. Company ABC had knowledge of Mr. Meldrum's arbitrary and discriminatory actions. Company ABC did not take any proper action to rectify and/or avoid the discriminatory actions incurred by Mr. Meldrum. Company ABC allowed Mr. Meldrum to discriminate against the Plaintiff by terminating the Plaintiff based on false pretextual grounds, when the same discipline was not applied to the younger Store Manager, Mr. Rodriguez, thus discriminating against the Plaintiff because of his age.

72.     John & Jane Doe had knowledge of Mr. Meldrum's arbitrary and discriminatory actions. John & Jane Doe did not take any proper action to rectify and/or avoid the discriminatory actions incurred by Mr. Meldrum. John & Jane Doe allowed Mr. Meldrum to discriminate against the Plaintiff by terminating the Plaintiff based on false pretextual grounds, when the same discipline was not applied to the younger Store Manager, Mr. Rodriguez, thus discriminating against the Plaintiff because of his age.

73.     At the time of these discriminatory incidents, Insurance Company XYZ held an insurance policy in favor of the Defendants, specifically to cover said discriminatory claims. Said insurance policy was in force at the time of the discriminatory incidents.

74.     Ever since the Plaintiff was dismissed, Plaintiff has suffered economic losses and deprivation of his salary. Plaintiff has lost sleep and rest, felt humiliated and discriminated, and has been at loss of his peace of mind and emotional stability.

75.     As up to this date, Plaintiff has not been able to obtain a job in spite of his endeavor to seek employment.

76.     The Plaintiff has no reasonably prospect of obtaining comparable alternative employment because of his age.

77.     The Defendants committed a discriminatory action against the Plaintiff by terminating the Plaintiff based on false pretextual grounds, when the same discipline was not applied to the younger Store Manager, Mr. Rodriguez, thus discriminating against the Plaintiff because of his age. In addition, the Defendants recruited a younger substandard employee to become the Store Manager in order to replace the Plaintiff after his illegal termination.

78.     The Defendants are liable for all the Plaintiff's damages.

## FIRST CAUSE OF ACTION

## DISCRIMINATION BASED ON AGE

79.     Plaintiff re-alleges each and every allegation stated in the preceding paragraphs as if fully set forth herein.

80.     Defendants' discriminatory conduct altered Plaintiff's employment condition because of Plaintiff's age.

81.     At the moment that the Defendants' incurred in the discriminatory conduct, the Plaintiff was performing his job well enough to meet the Defendants' legitimate expectations.

82.     Defendants' conduct against the Plaintiff constitutes discrimination on the basis of age in violation of ADEA, 29 USC sec. 621 et seq., Puerto Rico's Law No. 100 of June 30, 1959, 29 LPRA sec. 146 *et seq.* and Section 1 of Article II of the Constitution of the Commonwealth of Puerto Rico.

83.     As a proximate result of Defendants' discriminatory practice, Plaintiff has suffered intensely, has been deprived of his means of livelihood, has suffered economic losses and has been emotionally injured.

84.     As a result of Defendants' discriminatory practices, Plaintiff lost the salary he was entitled to.

85.     Defendants' are liable to Plaintiff for the back pay he was entitled had he maintained his position pursuant to ADEA, 29 USCA sec. 626 (b).

86.     Plaintiffs' last annual salary was approximately $53,000.00.

87.     Defendants' are liable to the Plaintiff under this cause of action for all lost wages and fringe benefits that the Plaintiff has incurred from the date of the adverse employment action to the date on which damages are settled. Such back pay should include lost wages, pension benefits, insurance, vacation, profit sharing, accrued sick leave and other economic benefits of employment, plus prejudgment interest.

88.     Pursuant to ADEA, Defendants' discriminatory practices against the Plaintiff were willful, malicious and/or carried with reckless indifference towards Plaintiffs' rights protected under federal law. Plaintiff is thus entitled to double and liquidated damages. This amount continues to increase with the passage of time and will be adjusted accordingly at the time of the trial.

89.     In the alternative, an adequate remedy under PR Law No. 100, Defendants' are liable to Plaintiff for double the amount of back pay, front pay and compensatory damages, without the need of establishing that there was a willful, malicious and/or reckless indifference towards Plaintiffs' rights.

90.     Plaintiff's dismissal was the culmination of Defendants' discriminatory practice against the Plaintiff because of his age.

91.     Defendants' are liable to Plaintiff under this cause of action, pursuant to ADEA, PR Law 100 and the Constitution of the Commonwealth of Puerto Rico, in excess of three million dollars ($3,000,000.00).

92.     In addition, Plaintiff is entitled to reinstatement and to an order forbidding any further discriminatory practices against him.

93.     In addition to the remedies before mentioned, Plaintiff is entitled to double compensatory and statutory damages. As a result thereof, Defendants' are liable for double compensatory and statutory damages. These damages are estimated at no less than three million dollars ($3,000,000.00), which times two equal six million dollars ($6,000,000.00).

## SECOND CAUSE OF ACTION

### WRONGFUL TERMINATION / UNJUST DISMISSAL

94.     Plaintiff re-alleges each and every allegation stated in the preceding paragraphs as if fully set forth herein.

95.     Defendants' actions constitute a termination of employment without just cause.

96.     Defendants' are liable to Plaintiff pursuant to P.R. Law No. 80, 29 LPRA sec. 185a *et seq*, for an amount equal to six (6) months of salary plus benefits, as defined in the law, and forty five (45) additional weeks of compensation, based on their highest earning in any thirty day period within the three years prior to the employee's dismissal. This amount to a severance pay of approximately seventy four thousand dollars ($74,000.00).

**THIRD CAUSE OF ACTION**

**TORTS DAMAGES**

97.    Plaintiff re-alleges each and every allegation stated in the preceding paragraphs as if fully set forth herein.

98.    Defendants' actions constitute an act or omission which caused damage to Plaintiff. Said act or omission was incurred due to fault or negligence.

99.    Defendants are liable to Plaintiff pursuant to Article 1802 of the Civil Code of Puerto Rico, 31 LPRA sec. 5141.

100.    John & Jane Doe's actions constitute an act or omission which caused damage to Plaintiff. Said act or omission was incurred due to fault or negligence.

101.    John & Jane Doe's are liable to Plaintiff pursuant to Article 1802 of the Civil Code of Puerto Rico, 31 LPRA sec. 5141.

102.    Company ABC's actions constitute an act or omission which caused damage to Plaintiff. Said act or omission was incurred due to fault or negligence.

103.    Company ABC is liable to Plaintiff pursuant to Article 1802 of the Civil Code of Puerto Rico, 31 LPRA sec. 5141.

104.    Mr. Meldrum's actions as officer and/or employee of the Defendants constitute an act or omission which caused damages to Plaintiff. Said act or omission was incurred due to fault or negligence.

105.    Therefore, Defendants are vicariously liable for damages caused by their officers and/or employees in their service pursuant to Article 1803 of the Civil Code of Puerto Rico, 31 LPRA sec. 5142.

106.   The Defendants actions as affiliated company of Company ABC constitute an act or omission which caused damages to Plaintiff. Said act or omission was incurred due to fault or negligence.

107.   Therefore, Company ABC is vicariously liable for damages caused by the Defendants' in their service pursuant to Article 1803 of the Civil Code of Puerto Rico, 31 LPRA sec. 5142.

108.   All before mentioned Defendants are jointly and severally liable for their negligent and intentional tort actions.

109.   As a result thereof, Defendants are liable for compensatory and statutory damages pursuant to Article 1802 and 1803 of the Civil Code of Puerto Rico, 31 LPRA sec. 5141, 5142. These damages are estimated at no less than five hundred thousand dollars ($500,000.00).

### FOURTH CAUSE OF ACTION

### INSURANCE COMPANIES ARE JOINTLY AND SEVERALLY LIABLE

110.   Plaintiff re-alleges each and every allegation stated in the preceding paragraphs as if fully set forth herein.

111.   Insurance Company XYZ is directly, jointly and severally liable, along with the other Co-defendants to the Plaintiff for the damages caused by their insured, pursuant to the terms and coverage of their respective policy of insurance.

### FIFTH CAUSE OF ACTION

### ATTORNEYS FEES AND PREJUDGMENT INTEREST

112.   Plaintiff re-alleges each and every allegation stated in the preceding paragraphs as if fully set forth herein.

113.    Defendants' are liable to Plaintiff for attorney's fees and costs under ADEA, 29 USC sec. 216 (b), and Title VII, 42 U.S.C. sec. 2000e-5(k) and 42 USC sec. 1988.

114.    Defendants' are also liable to Plaintiff for attorney's fees under PR Law 100 and Law 80.

115.    Defendants' are liable for prejudgment interest pursuant to Rule 54 of the Federal Rules of Civil Procedure.

## DEMAND FOR JURY TRIAL

116.    Plaintiff demand a trial by jury as to all claims and issues alleged herein.

## PRAYER

Wherefore, all allegations considered, Plaintiff prays that judgment be entered in their favor and against all Defendants', specifically:

1.  Granting Plaintiff's Complaint against Defendants. The Court should grant Plaintiff's complaint and find that the Defendants are liable to the Plaintiff based on the following: Discrimination based on Age pursuant to the Age Discrimination in Employment Act, 29 USC sec. 621 *et seq*., Puerto Rico's Law No. 100 of June 30, 1959, 29 LPRA sec. 146 *et seq*., and Section 1 of Article II of the Constitution of the Commonwealth of Puerto Rico; Wrongful Termination (Unjust Dismissal) pursuant to Puerto Rico's Law No. 80 of May 30, 1976, 29 LPRA sec. 185a *et seq*.;  and Tort Damages pursuant to Articles 1802 and 1803 of Puerto Rico's Civil Code, 31 LPRA secs. 5141, 5142.

2.  An order directing Defendants' to reinstate Plaintiff to her former position and to cease and desist of any further discriminatory conduct on the basis of Age.

3.  Awarding Plaintiff back pay, together with interest, for the period that Plaintiff was deprived of her salary, as it was awarded to other employees in her previous position.

4.  Awarding Plaintiff punitive and liquidated damages equal to twice the back pay and fringe benefits lost by the Plaintiff.

5.  Awarding Plaintiff lost benefits, both past and future.

6.  Awarding Plaintiff the amounts before mentioned in the Complaint, including the double compensatory damages.

7.  Awarding Plaintiff severance pay pursuant to PR Law No. 80.

8.  Awarding Plaintiff reasonable attorney's fees, together with costs, litigation expenses, and necessary disbursements.

9.  Awarding Plaintiff any and all other relief to which Plaintiff may be justly entitled.

**RESPECTFULLY SUBMITTED**: In San Juan, Puerto Rico, on this 16th day of July, 2016.

*__S/VICTOR M. RIVERA-RIOS__*
VICTOR M. RIVERA-RIOS
USDC BAR NUMBER 301202
RIVERA COLÓN, RIVERA TORRES & RIOS BERLY, PSC
1502 FERNANDEZ JUNCOS AVE
SAN JUAN, PR 00909
Telephone: (787) 727-5710
Facsimile: (787) 268-1835
E-Mail: victorriverarios@rcrtrblaw.com